1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  PHYLLIS ELAINE COLLINS,              Case No. EDCV 15-0149 (SS)

12                    Plaintiff,

13       v.
                                          **MEMORANDUM DECISION AND ORDER**
14  CAROLYN W. COLVIN, Acting
    Commissioner of Social
15  Security,

16                    Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21       Plaintiff Phyllis Elaine Collins ("Plaintiff") seeks review

22  of the final decision of the Commissioner of the Social Security

23  Administration (the "Commissioner" or the "Agency") denying her

24  application for Disability Insurance Benefits.  The parties

25  consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

26  the undersigned United States Magistrate Judge.  For the reasons

27  stated below, the decision of the Commissioner is AFFIRMED.

28

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for Title II Disability Insurance Benefits ("DIB") on May 12, 2012. (Administrative Record ("AR") 22). In the application, Plaintiff alleged a disability onset date of March 15, 2010. (Id.). The agency denied Plaintiff's application initially on October 5, 2012, and upon reconsideration on March 5, 2013. (Id.). On April 8, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.). Plaintiff testified before the ALJ, Jay E. Levine, on October 3, 2013. (Id. at 22, 28). On October 31, 2013, the ALJ issued a decision denying Plaintiff benefits. (AR 19, 28). Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on December 2, 2014. (Complaint at 2). Plaintiff then filed an action in this Court on January 23, 2015. (Case No. 15-0149 SS).

## III.

### FACTUAL BACKGROUND

Plaintiff was born on July 5, 1954. (AR 59). Plaintiff was fifty-five years old at the time of her alleged disability onset date, (AR 59), and fifty-nine years old at the time of her hearing before the ALJ. (AR 35). Plaintiff did not graduate from high school and has no job or vocational training other than on-the-job-training. (AR 35-36). Plaintiff worked for twenty-

2

1   five years at a cord factory making electrical cords.[1]  (AR 36).

2   Plaintiff's job required a significant amount of standing and

3   lifting of objects weighing ten pounds or more.   (AR 36, 44,

4   178).  Plaintiff stopped working in 2005 after the cord factory

5   went out of business.  (AR 37, 176).  Plaintiff was unemployed

6   from 2006 to 2008 and then briefly operated "a little day care"

7   in her home in 2009, but she stopped operating the day care after

8   having difficulty standing and being able to walk children to and

9   from school.  (AR 37).  Plaintiff alleges an onset of disability

10  due to pain in her knees, hips, shoulders and elbows, arthritis,

11  hypertension, headaches, depression and anxiety.  (AR 39-44).  In

12  the Disability Report accompanying the Disability Insurance

13  Benefits Application, Plaintiff lists "uncontrolled high blood

14  pressure" and pain in "both knees" as physical conditions

15  limiting her ability to work.  (AR 59).

16

17  **A.   <u>Medical History</u>**

18

19       **1.   Arrowhead Regional Medical Center**

20

21       On January 23, 2010, Plaintiff went to the emergency room

22  due to severe pain in both knees.  (AR 219).  The emergency room

23  physician prescribed "Norco," a pain medication.  (AR 220).  The

24  physician's final impression was "left hip/knee" pain and

25  ─────────────────────

26  [1]  The vocational expert elicited testimony that Plaintiff took
    orders from customers, read blueprints, and made coils.  (AR 38).
27  Plaintiff also intermittently worked as a lead worker and
    supervised five people when the lead worker went on vacation; in
28  that role, coordinating shipping, tracking and payments were
    among Plaintiff's responsibilities.  (<u>Id.</u>).

3

1   degenerative joint disease. (AR 221). During a June 27, 2011,

2   doctor's visit, Plaintiff also complained of knee pain. (AR

3   247).

4

5       From February 2010 to March 2013, Plaintiff's primary care

6   physician, Dr. Joachim M. Brown, D.O., ordered Arrowhead's

7   Radiology and Pathology departments to conduct a number of

8   laboratory tests on Plaintiff, including MRIs and mammograms.

9   (AR 262-275). On May 23, 2012, an MRI of Plaintiff's bilateral

10   standing knees found "mild tibial spine osteophyte." (AR 272).

11   On June 6, 2012, an MRI of Plaintiff's bilateral knees found

12   "mild osteoarthritis" of the knees. (AR 271). An outpatient

13   note dated June 21, 2012, noted knee pain and osteoarthritis.

14   (AR 243). Another examination of Plaintiff's knees found

15   positive crepitus and a decreased range of motion. (AR 244).

16   The physician noted that throbbing in the knees increased with

17   walking and stair climbing. (Id.). On February 8, 2013, an

18   examination of Plaintiff's right shoulder found mild

19   osteoarthritis. (AR 266).

20

21       **2.   Vincente R. Bernabe, D.O.**

22

23       At the request of the Department of Social Services,

24   Plaintiff visited Dr. Bernabe for an orthopedic examination and

25   consultation in September 2012. (AR 222). Plaintiff complained

26   of chronic left knee pain and left hip pain. (Id.). Dr. Bernabe

27   noted that Plaintiff's pain started in 2010 and had progressed

28   from an intermittent pain she felt twice a month to constant

1   "throbbing" and "burning."   (Id.).   An examination revealed that

2   Plaintiff's range of motion of her upper extremities was within

3   normal limits.[2]   (AR 224).   However, examination of Plaintiff's

4   hips revealed "tenderness to palpation at the greater trochanter

5   bursa of the left hip."   (Id.).   Dr. Bernabe also found "grinding

6   and crepitus in the patellofemoral joint of the left knee, with

7   popping [and] tenderness at the insertion of the patellar tendon

8   into the proximal tibia."   (AR 225).   Dr. Bernabe determined

9   Plaintiff should be able to lift and carry with no restrictions,

10  be able to stand and walk up to six hours of an eight-hour day,

11  and have no problems sitting.   (AR 226).

12

13  **B.   <u>Non-Examining Physicians' Opinions</u>**

14

15      On October 5, 2012, Disability Determination Service ("DDS")

16  medical consultants determined that there was insufficient

17  evidence to evaluate Plaintiff's claim, i.e. there was

18  insufficient evidence to establish a severe impairment prior to

19  the date last insured.   (AR 63-64).   The doctor concluded that

20  Plaintiff's statements about the intensity, persistence and

21  functionally limiting effects of the symptoms were not

22  substantiated by the objective medical evidence alone.   (Id. at

23  63).   The doctor also noted that Plaintiff's statements regarding

24  her symptoms were only partially credible.   (Id.).   The ALJ

25  assigned "great" weight to the DDS consultants' opinion.   (AR

26  27).

27  ─────────────────

28  [2] Dr. Bernabe examined Plaintiff's shoulders, elbows, wrists,
    hands and fingers.   (AR 224).

On March 5, 2013, a DDS physician reviewed the case on reconsideration and affirmed that Plaintiff was not disabled. (AR 71). The physician concluded that Plaintiff had "non-severe" hypertension. (AR 70). The DDS physician found Plaintiff's individual statements regarding her symptoms only partially credible. (AR 71). The physician observed that Plaintiff stopped working because she was laid off, not because of the medical problems she alleged. (Id.).

**B. <u>Vocational Expert Testimony</u>**

Vocational Expert ("VE") Sandra Fioretti testified at the ALJ hearing regarding Plaintiff's past work and the existence of jobs that Plaintiff could perform given her functional limitations. (AR 53-57). The VE identified Plaintiff's past work as "electronic assembler, developmental," with a Dictionary of Occupational Titles ("DOT") listing of 726.261-010. (AR 53). The VE opined that the occupation constituted "light" and "semiskilled" work. (AR 54).

The ALJ posed three hypotheticals to the vocational expert. First, the ALJ asked whether an individual who was Plaintiff's age, had the same education and work experience, and was restricted to a "medium" range of work could perform Plaintiff's past work.[3] (AR 54). The VE opined that such a person would be

---

[3] The hypothetical individual also could not climb ladders but could handle frequent stairs, ramps, stooping or bending. (AR 54).

1  able to perform Plaintiff's past work.  (AR 54-55).  The ALJ then
2  asked the VE whether such an individual could perform Plaintiff's
3  past work if the individual: could lift or carry fifty pounds
4  occasionally and twenty-five pounds frequently; be limited to
5  standing or walking four hours out of an eight hour day; could
6  sit without problems; and could use stairs and ramps occasionally
7  and bend and stoop occasionally.  (AR 55).  The VE concluded the
8  individual could not perform Plaintiff's past work.   (Id.).
9  However, the VE testified that such an individual could perform
10  limited work as a hand packager, with 20,000 jobs nationally and
11  1,500 locally, or as a machine feeder, with 10,000 jobs
12  nationally and 1,600 locally.[4]  (AR 55-56).

13

14      Finally, the ALJ further limited the hypothetical individual
15  to "light" work, i.e., lifting or carrying twenty pounds
16  occasionally and ten pounds frequently, and asked whether
17  Plaintiff possessed any skills that would transfer to any work
18  within the third hypothetical.  (AR 56).  The VE found that
19  Plaintiff did not possess any skills that would enable her to
20  perform as the individual in hypothetical three would.  (Id.).
21  \\
22  \\
23  \\

24  _____

25  [4] The VE emphasized that because of the hypothetical individual's
    standing/walking limitation, she had to lower the number of
26  positions available.  (AR 55).  She further testified that the
    limitation on standing and walking was not fully consistent with
27  the medium DOT category of full ability to stand and walk, so her
    testimony and the reduced number of available positions was based
28  on her own training and experience.  (AR 56).

7

C.    **Plaintiff's Testimony**

 

In regards to her work history, Plaintiff testified that she worked at a "cord factory" for twenty-five years until the factory closed in 2005. (AR 36-37). She did babysitting and ran a day care center in her home for some period of time after that. (AR 37).

 

Plaintiff testified that beginning in March 2010, she started having "problems with [her] knees and shoulders." (AR 39). Plaintiff was examined by a doctor who informed her that she had arthritis. (Id.). Plaintiff continued to feel pain in her right knee, but also began feeling pain in her hip. (Id.). She went to the emergency room due to her hip pain, "but they [were] so concerned about [her] blood pressure because [she] was at stroke level . . . [so] they didn't even do anything about the hip." (Id.). While Plaintiff suffered from pain in her hip, she used her husband's cane to assist her in walking around the house. (AR 48). Plaintiff testified that, although the pain began in her right knee, she eventually starting feeling pain in both knees and, even while testifying before the ALJ, stated, "they're burning." (AR 40).

 

Plaintiff further testified that sometime around March 2011, when her insured status lapsed, she had "uncontrollable" hypertension and swelling of the feet, which interfered with her ability to work. (AR 41). As a result of her hypertension, Plaintiff also suffered from "bad headaches." (Id.). Sometimes

while walking, Plaintiff's knees would suddenly "pop" and "a leg would give out."[5]   (AR 42).   Plaintiff was once prescribed a pain killer "other than Ibuprofen," but she only took it once because she did not like how it made her feel.[6]   (AR 50).

        At the time of the hearing, Plaintiff alleged that her knees continued to "burn constantly."[7]   (AR 42).   Plaintiff also testified that she suffer[ed] from pain in the shoulders[8], and elbow.   (AR 43-44).   Due to the pain in her shoulders, Plaintiff could not cook, blow dry her hair, or lift items she could lift prior to the pain onset.   (AR 45).   Plaintiff opined that she could no longer perform a job similar to her cord factory job as that would require her constantly being on her feet.   (AR 47-48).   She also stated that she had not had any surgeries or worn a brace on her knees, shoulder or hips.   (AR 49-50).

---

[5] Initially, the pain in her knee and leg was intermittent, but by the time of the hearing, she was constantly in pain.   (AR 42).

[6] Plaintiff started taking Ibuprofen the year before the ALJ hearing.   (AR 50).

[7] The pain in her knee also limits the length of time Plaintiff can be on her feet.   (AR 46).   For example, Plaintiff testified that she could not stand on her feet for two straight hours preparing a Thanksgiving meal without taking a break to sit down. (Id.).   She can only be on her feet for about forty-five minutes at a time, whereas in the past, Plaintiff could stand for two to three hours at a time.   (AR 46-47).

[8] Plaintiff testified that this is due to the "constant use of doing the same thing every day" when she worked at the cord factory, which involved loading and lifting blades weighing fifty pounds or more into heavy molds with cords.   Plaintiff did not file a Worker's Compensation Claim for this injury.   (AR 43-44).

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

1            Subpart P, Appendix 1?  If so, the claimant is found

2            disabled.  If not, proceed to step four.

3      (4)   Is the claimant capable of performing his past work?

4            If so, the claimant is found not disabled.  If not,

5            proceed to step five.

6      (5)   Is the claimant able to do any other work?  If not, the

7            claimant is found disabled.  If so, the claimant is

8            found not disabled.

9

10 Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

11 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-

12 (g)(1) & 416.920(b)-(g)(1).

13

14      The claimant has the burden of proof at steps one through

15 four and the Commissioner has the burden of proof at step five.

16 Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an

17 affirmative duty to assist the claimant in developing the record

18 at every step of the inquiry.  Id. at 954.  If, at step four, the

19 claimant meets her burden of establishing an inability to perform

20 past work, the Commissioner must show that the claimant can

21 perform some other work that exists in "significant numbers" in

22 the national economy, taking into account the claimant's RFC,

23 age, education, and work experience.  Tackett, 180 F.3d at 1098,

24 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

25 416.920(g)(1).  The Commissioner may do so by the testimony of a

26 vocational expert or by reference to the Medical-Vocational

27 Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2

28 (commonly known as "the grids").  Osenbrock v. Apfel, 240 F.3d

1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
(strength-related) and non-exertional limitations, the Grids are
inapplicable and the ALJ must take the testimony of a vocational
expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000)
(citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process
and concluded that Plaintiff was not disabled within the meaning
of the Social Security Act.  (AR 27-28).  At step one, the ALJ
found that Plaintiff had not engaged in substantial gainful
activity during the period from her alleged onset date of March
15, 2010 through her date last insured of March 31, 2011.  (AR
24).  At step two, the ALJ found that Plaintiff's only medically
determinable impairment was "osteoarthritis of the bilateral
knees and right shoulder."  (AR 24).  However, the ALJ reasoned
that Plaintiff's osteoarthritis, while medically determinable,
did not establish a "severe" impairment or combination of
impairments.[9]  (AR 24).

---

[9] A physical or mental impairment is considered "severe" if it
"significantly limits [the claimant's] physical or mental ability
to do basic work activities."  20 C.F.R. § 404.1520(c).  The ALJ
wrote that "basic work activities" are the abilities and
aptitudes necessary to do most jobs, including physical functions
such as walking, standing, lifting, pushing, pulling, reaching,
carrying, handling, or sitting; capacities for seeing, hearing
and speaking; understanding, carrying out and remembering simple
instructions; use of judgment; responding appropriately to
supervision, co-workers and usual work situations; and dealing
with changes in a routine work setting.  (AR 24-25).

1    The ALJ concluded that although Plaintiff's medically

2    determinable impairments could have been reasonably expected to

3    produce the alleged symptoms, Plaintiff's statements concerning

4    the intensity, persistence and limiting effects of the alleged

5    symptoms were not entirely credible.    (AR 25).    For example,

6    although Plaintiff reported on a Disability Report and during the

7    hearing that she suffered from debilitating headaches, she

8    repeatedly denied headaches to her treating physicians.    (AR 25,

9    230 (note indicates no "HA" or headache), 246 (same)).    Moreover,

10   Plaintiff alleged that amputation of her right arm was "a

11   consideration," but there is no mention of such a drastic medical

12   procedure in the file nor is there evidence of a condition

13   requiring amputation of a limb.    (AR 25).    Plaintiff also failed

14   to comply with her prescribed medications[10] and failed to adhere

15   to her suggested diet.    (AR 26).    These inconsistencies lead the

16   ALJ to reject Plaintiff's subjective testimony.

17

18   In reaching his conclusion, the ALJ gave "significant

19   weight" to Dr. Bernabe's opinion because Dr. Bernabe "ha[d] the

20   expertise to evaluate and assess [Plaintiff's] condition . . .

21   [and] Dr. Bernabe physically examined and objectively tested

22   [Plaintiff]."    (AR 27).    The ALJ opined that Dr. Bernabe's

23

24   [10] Plaintiff was prescribed narcotic pain medication, which she
     only used once (three years before the ALJ hearing) because she

25   did not like the way it made her feel.    (AR 26, 50).    Plaintiff
     took Ibuprofen instead.    (AR 49-50).    There is no indication that

26   she requested a different kind of narcotic pain medication.    (AR
     26).    Additionally, no aggressive treatment was recommended or

27   anticipated for Plaintiff's osteoarthritis or hypertension.
     (Id.).    Thus, the ALJ concluded that Plaintiff's symptoms were

28   not as severe as alleged.

opinion was "consistent and reasonable in light of the record as a whole." (Id.). The ALJ also considered the opinions of two State agency physicians, giving those opinions "great" weight. (Id.). The ALJ held that the State agency physicians' assessments regarding Plaintiff's functional limitations are "highly credible because they are supported by objective medical evidence, which shows [Plaintiff] received only conservative treatment for her conditions." (Id.).

The ALJ concluded that Plaintiff failed to establish disability on or before the date last insured, March 21, 2011. (AR 26). Before March 31, 2011, Plaintiff sought treatment for hypertension, but denied chest pain, shortness of breath, edema, headaches and weakness.[11]   (Id.).   Although Plaintiff's hypertension remained uncontrolled, her pain could have been minimized by performing strengthening exercises, wearing better shoes and taking prescribed medications. (Id.). As Plaintiff did not adhere to the medical advice provided, the ALJ discounted the severity of her symptoms. (Id.).

In sum, the ALJ found that Plaintiff's physical impairments, considered singly and in combination, did not significantly limit Plaintiff's ability to perform basic work activities. (AR 27). Accordingly, Plaintiff was not under a disability as defined by 20 C.F.R. §404.1520(c). (AR 27).

---

[11]   The ALJ also considered Plaintiff's history of obesity as a contributing factor to her co-existing impairments, but found there was no specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. (AR 26).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)(citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\

\\

**VII.**

**DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff asserts that the ALJ erred in determining that she suffers no more than a de minimis impairment. (Memorandum in Support of Plaintiff's Complaint ("MSC"), Dkt. No. 10, at 4). Plaintiff contends that the ALJ failed to give appropriate weight to the medical evidence, which shows that she suffered from a severe impairment that erodes her residual functional capacity. (Id. at 6).

Second, Plaintiff asserts that the ALJ erred in determining her credibility. (Id. at 6). Plaintiff contends that her primary basis for disability was due to her knee pain, not her headaches, and the fact that she did not report her headaches to her providers is irrelevant. (Id. at 8). The ALJ also did not provide legally sufficient reasons for rejecting Plaintiff's testimony. (Id.).

This Court disagrees with Plaintiff's contentions. First, substantial evidence supports the ALJ's findings regarding the non-severity of Plaintiff's impairments. Even if those findings were erroneous, however, the error was harmless and the decision remains legally valid. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (harmless error rule applies to review of administrative decisions regarding disability). Furthermore, the decision provided clear and convincing reasons

for rejecting Plaintiff's subjective testimony about her pain or objective evidence of her mental health status.  Accordingly, for the reasons discussed below, the ALJ's Decision is AFFIRMED.

**A.   Substantial Evidence Supports The ALJ's Finding of Non-Severity**

At step two of the sequential evaluation, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.   MSC at 3; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (plaintiff bears burden of proving she suffers from any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities).  The step two inquiry is a de minimis screening device to dispose of groundless claims. Smolen, 80 F.3d at 1290.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  (Id.); see also SSR 85-28, 1985 WL 56856, at *3 (1985).  The Ninth Circuit has affirmed a non-severity finding where none of the claimant's treating or examining doctors ever state that the claimant is disabled, even if the claimant suffers some apparent or determinable symptoms.  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (finding no evidence to support a claim that impairments were "severe" where appellant's treating and examining physicians never indicated that appellant was disabled,

even though he clearly suffered from diabetes, high blood pressure and arthritis).  A finding of "no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment."  Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005).  A mere diagnosis alone is insufficient for finding a "severe" impairment.  Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014).

While it appears that doctors prescribed "Norco" for pain after Plaintiff's January 23, 2010 emergency room visit, (AR 220), Plaintiff generally took only Ibuprofen for pain.  (AR 49-51).  Plaintiff refused to take stronger prescribed pain medicine because she "did not like how it made [her] feel."[12]  (AR 49-50).  Moreover, Plaintiff's doctors suggested strengthening exercises and wearing better shoes as treatment for her condition.  (AR 243).  The conservative treatment and use of non-steroidal anti-inflammatory drugs suggest that Plaintiff's symptoms are not as severe as alleged.  (AR 26).

Furthermore, no aggressive treatment was recommended or anticipated for Plaintiff's osteoarthritis or her hypertension.  There is no objective evidence that these conditions more than minimally impacted Plaintiff's ability to physically perform basic work activities before or after the date last insured.

\\

\\

---

[12] Plaintiff admits she does not like medication and "take[s] the pain as long as [she] can."  (AR 51).

1    The ALJ gave "significant" weight to the opinion of
2  consultative examiner Dr. Bernabe.  (AR 27).  Dr. Bernabe
3  determined that Plaintiff should be able to lift and carry with
4  no restrictions, be able to stand and walk up to six hours of an
5  eight-hour day and have no problems sitting.  (AR 226).
6  Furthermore, she did not require assistive devices.[13]  (AR 27, 48-
7  49, 226).  The ALJ also considered the opinions of two State
8  agency physicians and gave those opinions "great" weight.  (AR
9  27).  The State agency physicians reviewed the medical evidence
10  and concluded that there was no evidence of Plaintiff's having a
11  severe impairment. (AR 27, 65, 73).[14]  Reports by physicians that
12  an impairment is "not severe" may supply a basis for an ALJ to
13  similarly conclude that an impairment is not severe.  Febach, 580
14  F. App'x. at 531 (affirming ALJ's reliance on three doctors'
15  conclusions that claimant's depression was not severe).

16

17    The total absence of objective evidence of a severe medical
18  impairment supported the ALJ's step two determination that
19  Plaintiff's impairments were not severe.  Webb, 433 F.3d at 646.
20  However, even if the ALJ's determination at step two was
21  erroneous, the error was harmless, as discussed more fully below.
22  \\
23  \\
24  
25  [13] Plaintiff testified that she used her husband's cane for only
   one day in 2013.  (AR 48-49).
26  
27  [14] The Disability Determination and Transmittal Forms identify a
   "Reg-Basis Code" of F2 (AR 65, 73), which stands for a nonsevere
   impairment.  See POMS DI 26510.045(a), available at
28  https://secure.ssa.gov/apps10/poms.nsf/lnx/0426510045

**B.   To The Extent The ALJ Erred In Assessing Plaintiff's Physical Impairments, Any Error Was Harmless**

Even if the ALJ erred in finding Plaintiff's impairments non-severe at step two, any error would be harmless. "The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). Therefore, in deciding whether to remand for error, a reviewing court must consider "an estimation of the likelihood that the result would have been different." Id. at 1055.

The evaluation of impairments at step two is a de minimis test intended to eliminate the most minor of impairments. See Webb, 433 F.3d at 687 (step two is a "de minimis threshold"). ALJ errors in social security cases are harmless if they are "inconsequential to the ultimate nondisability determination." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

The court will set aside a denial of social security benefits "only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error." Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015). Even where the ALJ reaches a nondisability finding for invalid reasons, the court will not reverse the ALJ's decision if the

error was harmless.  See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (reviewing adverse credibility finding for harmless error, citing Batson v. Comm'r, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).  "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error[;] . . . it is whether the ALJ's decision remains legally valid, despite such error."  Id.; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").  Moreover, even though courts apply the harmless error doctrine cautiously in social security cases, no "rigid rule" applies to the degree of certainty required to conclude that an ALJ's error was harmless.  Marsh, 792 F.3d at 1173.  Although remand is appropriate where "the circumstances of the case show a substantial likelihood of prejudice" from the error, remand is not appropriate where the error's harmlessness is clear.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).

Here, even if the ALJ had found Plaintiff's condition to be severe at step two, the ultimate result would not have been different.  At the ALJ hearing, the VE testified that a hypothetical person with Plaintiff's age, education and prior work experience who was restricted to a medium range of work and some postural restrictions could still perform Plaintiff's past work as an electronic assembler.  (AR 53-55).  The VE further testified that a hypothetical person with even greater restrictions could perform other work existing in significant

21

1  numbers in the regional and national economy. (AR 55-56) (30,000

2  other jobs existing in the national economy); See Gutierrez v.

3  Comm'r of Soc. Sec. Admin., 740 F.3d 519, 527-29 (9th Cir. 2014)

4  (25,000 jobs nationally is a significant number). As noted

5  above, the only doctor who found that Plaintiff had any

6  functional limitations at all was Dr. Bernabe, who determined

7  that Plaintiff could lift and carry with no restrictions, could

8  stand and walk up to 6 hours of an 8 hour day, and had no

9  restriction on sitting. Dr. Bernabe found no other significant

10  exertional or non-exertional limitations. (AR 226).

11

12      Accordingly, even if the ALJ had found Plaintiff's

13  hypertension or knee pain to be "severe" impairments, based only

14  upon Plaintiff's testimony, he still would have found her not

15  disabled based upon a combination of subjective testimony and

16  medical evidence.[15] (AR 226). In the second hypothetical posed

17  to the VE, the ALJ asked the VE if an individual with Plaintiff's

18  age, education, prior work experience, limited to a medium range

19  of work, no ladders, occasional stairs, occasional stooping or

20  bending, who could lift or carry 50 pounds occasionally, 25

21  pounds frequently, but limited to standing or walking only four

22  hours out an eight hour day, could perform other work. The VE

23  testified that such an individual could work as a hand packager

24

25  [15] The regulations define medium work as lifting no more than 50

26  pounds at a time with frequent lifting or carrying of objects
   weighing up to 25 pounds. A full range of medium work requires

27  standing or walking, off and on, for a total of approximately 6
   hours in an 8-hour workday." Social Security Ruling (SSR) 83-10,

28  1983 SSR LEXIS 30.

1 (20,000 jobs nationally) or a machine feeder (10,000 jobs

2 nationally). (AR 53-56).

3

4     Had the ALJ reached steps five of the disability analysis,

5 the VE's testimony would have constituted substantial evidence

6 supporting a non-disability finding. See Osenbrock, 240 F.3d at

7 1163 (VE testimony constitutes substantial evidence to support

8 ALJ's vocational findings). Because the ALJ's decision "remains

9 legally valid," regardless of any alleged step two error, the

10 ALJ's decision must be affirmed. Carmickle, 533 F.3d at 1162.

11

12 **C.   The ALJ Provided Clear And Convincing Reasons For Rejecting**

13      **Plaintiff's Subjective Testimony**

14

15     When assessing a claimant's credibility, the ALJ must engage

16 in a two-step analysis. Molina, 674 F.3d at 1112 (citing Vasquez

17 v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)). First, the ALJ

18 must determine if there is objective medical evidence of an

19 impairment that could reasonably produce the symptoms alleged.

20 (Id.). If there is such evidence, to reject the claimant's

21 testimony, the ALJ must give clear and convincing reasons.

22 (Id.). If claimant produces objective medical evidence of

23 impairment, the ALJ may not discredit a claimant's testimony on

24 the severity of her pain because the degree of pain alleged is

25 not supported by objective medical evidence. Burch v. Barnhart,

26 400 F.3d 676, 680 (9th Cir. 2005); Bunnell v. Sullivan, 947 F.2d

27 341, 346-47 (9th Cir. 1991). An ALJ must provide "specific,

28

cogent reasons for the disbelief." <u>Rashid v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).

In assessing the claimant's testimony, the ALJ may consider:

(1) Ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

(2) Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

(3) The claimant's daily activities.

<u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014).

Here, the ALJ found that Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms. (AR 25). However, the ALJ found that Plaintiff's statements concerning the severity and persistence of the symptoms are not entirely credible. (<u>Id.</u>). The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony: (1) Plaintiff's inconsistent statements concerning her symptoms or statements contradicted by the medical evidence; and (2) repeated noncompliance in following a prescribed course of treatment. (AR 25-27).

\\

**1.  Conflicting Statements Regarding Plaintiff's Symptoms**

First, the ALJ stated that discrepancies in Plaintiff's statements regarding her symptoms diminished the persuasiveness of her testimony.  (AR 25).  For instance, the ALJ observed that Plaintiff reported on a Disability Report and during the ALJ hearing that she suffered from debilitating headaches, but repeatedly denied headaches to her treating physicians.  (AR 230, 238, 246, 251, 254); see Greger v. Barnhart, 464 F.3d 968, 970, 972 (9th Cir. 2006) (ALJ properly rejected plaintiff's subjective testimony because plaintiff failed to report shortness of breath or chest pain to his doctors).

Furthermore, Plaintiff alleged that "they want to amputate my right arm," in her disability application, but there is no mention of an amputation procedure in her medical files, nor is there evidence of a condition that would require amputation of a limb.  (AR 206).  The ALJ noted that the record contained no mention of such a drastic medical procedure.  (AR 25).  The extreme nature of this statement was a reasonable ground for the ALJ to rely upon in rejecting Plaintiff's credibility.

**2.  Failure To Follow Prescribed Course of Treatment**

Second, the ALJ noted that Plaintiff's repeated failure to take prescribed medicines and treatments further undermined the credibility of her subjective complaints.  (AR 25).  For example,

Plaintiff failed to comply with her prescribed medications and failed to adhere to her suggested diet. (AR 239, 240, 242, 247).

To treat Plaintiff's pain, she was told to perform strengthening exercises and to obtain better shoes. (AR 243). She was prescribed narcotic pain medication. (AR 26, 50-51). However, she had not taken the medication for several years because she did not like how it made her feel. (Id.). Instead, Plaintiff opted to take non-steroidal anti-inflammatory drugs. (AR 50). There is no indication that Plaintiff requested a different kind of narcotic pain medication, thereby indicating a possible unwillingness to do what was necessary to improve her condition. (AR 26). See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ properly "inferred that [the claimant's] pain was not as all-disabling as he reported [because] he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects."); Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Accordingly, the ALJ provided clear and convincing reasons to reject Plaintiff's subjective pain testimony.

\\

\\

\\

# VIII.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.

DATED:  December 29, 2015

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**